UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

RAUL HERNANDEZ GONZALEZ,

*Petitioner*,

v. Case No. 3:26-cv-1400-JEP-LLL

WARDEN, NORTH FLORIDA DETENTION CENTER, et al.,

*Respondents*.
______________________________/

**ORDER**

Petitioner, a detainee of the United States Immigration and Customs Enforcement ("ICE"), filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241 on May 28, 2026. (*See generally* Doc. 1).[1] Petitioner argues, among other things, that his prolonged detention violates the Fifth

[1] At the time Petitioner filed this case, he was housed at Baker Correctional Institute in Sanderson, Florida. (*See* Doc. 1 at 1). According to ICE's website, he is currently housed at a detention facility in Texas. *See* Online Detainee Locator System, ICE, available at https://locator.ice.gov/odls/#/search (last visited Aug. 4, 2026). Because Petitioner was detained within the Middle District of Florida when he filed this case, this Court retains jurisdiction despite his transfer. *See Rumsfeld v. Padilla*, 542 U.S. 426, 441 (2004) ("[W]hen the Government moves a habeas petitioner after she properly files a petition naming her immediate custodian, the District Court retains jurisdiction and may direct the writ to any respondent within its jurisdiction who has legal authority to effectuate the prisoner's release."); *see, e.g.*, *Elcock v. Streiff*, 554 F. Supp. 2d 1279, 1282 (S.D. Ala. 2008) ("[J]urisdiction attaches upon the initial filing of the § 2241 petition and will not be destroyed by a petitioner's subsequent Government-effectuated transfer and accompanying change in physical custodian. . . . [I]f a § 2241 petition must be transferred every time the petitioner is transferred, it is doubtful that the case would ever be decided.").

Amendment's Due Process Clause as the Supreme Court construed it in *Zadvydas v. Davis*, 533 U.S. 678 (2001). (*See* Doc. 1 at 1–2, 6–7). He asks the Court to order his release. (*Id.* at 8).

The Federal Respondents filed a response in opposition to the petition. (*See generally* Doc. 5). According to the Federal Respondents, Petitioner has impeded his removal and, thus, the Court should toll the presumptively reasonable time period. (*Id.* at 6–9). The Federal Respondents also provide a declaration from a deportation officer that sets forth what ICE represents to be evidence of a significant likelihood of removal in the foreseeable future. (Doc. 5-3 at 3). The Warden filed a motion to dismiss, arguing he is not a proper respondent in this case. (Doc. 4). Upon review of the parties' filings, the Court finds that the petition must be granted.

**I.**

Petitioner, a citizen of Cuba, entered the United States on December 21, 1996. (Doc. 1 at 1; Doc. 5-1 at 1–2). An immigration judge ordered Petitioner removed on February 10, 1997. (Doc. 1 at 5, 7; Doc. 5-1 at 2; Doc. 5-2 at 1). On April 14, 1997, ICE placed Petitioner on an order of supervision ("OSUP"). (Doc. 5 at 2). On October 6, 2025, ICE "encountered" Petitioner "during his annual immigration report" and took him into custody. (Doc. 1 at 2, 5–7; Doc. 5-1 at 2). The same day, ICE revoked Petitioner's OSUP. (Doc. 5-3 at 2). ICE issued to Petitioner notices of removal to Mexico on February 25, 2026, April

7, 2026, and June 2, 2026, and Petitioner refused to sign them. (*Id.*). On June 11, 2026, ICE told Petitioner that it planned to take him to the United States-Mexico border to effectuate his removal. (*Id.*).

Also on June 11, 2026, a deportation officer authored a declaration explaining ICE's position with respect to Petitioner's likelihood of removal:

> Petitioner is the subject of a final order of removal dated February 10, 1997.
>
> Petitioner is currently detained pursuant to INA § 241(a) at the Baker Correctional Institute. Petitioner has been detained pursuant to INA § 241(a) as of October 6, 2025, and was issued revocation of order of supervision release paperwork.
>
> Petitioner's OSUP was revoked pursuant to 8 § C.F.R. 241.13(i) as there is a significant likelihood that he may be removed in the reasonably foreseeable.
>
> . . . .
>
> ICE intends to remove the [P]etitioner to Mexico pursuant to INA § 241(b)(2)(E).
>
> . . . .
>
> The [P]etitioner will receive a Notice of Removal to Mexico 24 hours prior to his transfer to the relevant field office.
>
> The receiving ERO field office will then notify Mexico's Instituto Nacional de Migracion (INM) of the [P]etitioner's upcoming removal to Mexico.
>
> Following INM's final acceptance, he will immediately be transported to the Customs and Border Patrol corresponding port of entry for removal to Mexico.

> Each ICE field office along the southwest border that processes third-country removals to Mexico removes a varying amount each week. Removals take place from each corresponding office from once a week to several times a week.
>
> Therefore, ICE determines that there is a significant likelihood of removal in the reasonably foreseeable future.
>
> ICE will follow proper procedures for third-country removals for the [P]etitioner as set forth in the Guidance Regarding Third Country Removals, issued by the DHS Secretary on March 30, 2025.

(Doc. 5-3 at 1–3).

**II.**

Following an order of removal, immigration detention is governed by 8 U.S.C. § 1231. *See Johnson v. Guzman Chavez*, 594 U.S. 523, 544 (2021) ("§ 1231 explains what to do if the alien is ordered removed."); *see also Deshati v. Noem*, No. 25-cv-15940-ESK, 2025 WL 3204227, at *2 (D.N.J. Nov. 17, 2025) ("The statute governing post-final order of removal immigration detention is 8 U.S.C. § 1231."). Pursuant to section 1231(a)(1)(A), "when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days." Detention during the removal period is mandatory. 8 U.S.C. § 1231(a)(2)(A). "The 90-day removal period shall be extended, and the noncitizen may remain in detention, if the noncitizen (1) 'fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure' *or* (2) 'conspires or acts to prevent the alien's removal.'"

*Singh v. U.S. Att'y Gen.*, 945 F.3d 1310, 1313 (11th Cir. 2019) (quoting 8 U.S.C. § 1231(a)(1)(C)).

The Supreme Court in *Zadvydas* held that indefinite detention of aliens after a final order of removal raises serious constitutional concerns. 533 U.S. at 690–99. Once an order of removal is final, the government may continue to detain an alien only for a reasonable amount of time. *See id.* at 699–701. The reasonableness of the detention is to be measured "primarily in terms of the statute's basic purpose, namely, assuring the alien's presence *at the moment of removal*." *Id.* at 699 (emphasis added). The Supreme Court held that six months is a presumptively reasonable period to detain a removable alien awaiting deportation. *Id.* at 700–01. "Although not expressly stated, the Supreme Court appears to view the six-month period to include the 90-day removal period [from section 1231(a)(1)(A)] plus 90 days thereafter." *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002).

After that six-month period has passed, if the alien "provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 1052 (quoting *Zadvydas*, 533 U.S. at 701). Thus, "in order to state a claim under *Zadvydas* the alien not only must show post-removal order detention in excess of six months but also must provide evidence of a good reason to believe that there is no significant likelihood of removal in

the reasonably foreseeable future." *Id.* If an alien makes these showings, then the burden shifts to the government to rebut the presumption with sufficient evidence establishing that there is a "significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. Notably, *Zadvydas* claims asserted prior to the presumptively reasonable six-month period are deemed unripe and subject to dismissal without prejudice. *See Akinwale*, 287 F.3d at 1052; *see also Ramos Alvarez v. U.S. Immigr. & Customs Enf't*, No. 3:25-cv-1038, 2025 WL 2591830, at *1 (M.D. Fla. Sept. 8, 2025).

**III.**

Here, Petitioner was taken into ICE custody on October 6, 2025, and he filed this case on May 28, 2026—well over six months after his re-detention. (Doc. 1 at 2, 5–7; Doc. 5-1 at 2; *see generally* Doc. 1). Although Petitioner had been in ICE custody longer than 180 days when this case was filed, the Federal Respondents ask the Court to toll the six-month period because Petitioner "has refused to sign the notice of removal to Mexico multiple times and has explicitly informed ICE he will not comply with removal to both Mexico and Cuba." (Doc. 5 at 8).

Section 1231(a)(1)(C) permits the "removal period" to be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts to prevent the alien's removal subject to an order of removal." 8 U.S.C. § 1231(a)(1)(C).

Courts have applied § 1231(a)(1)(C) differently when addressing a *Zadvydas* claim:

> Many courts conduct an analysis using the burden-shifting framework from *Zadvydas*, considering an alien's failure to cooperate in determining whether the alien can show "good cause" to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Other courts contend that an alien's failure to cooperate precludes an analysis under *Zadvydas* altogether. Finally, some courts find an alien's failure to cooperate or filing of litigation equitably tolls, possibly indefinitely, the six-month removal period. In fact, a couple of courts covered both bases finding obstruction tolled the removal period, and in the alternative, the alien did not meet the *Zadvydas* standard.

*Glushchenko v. United States Dep't of Homeland Sec.*, 566 F. Supp. 3d 693, 705–06 (W.D. Tex. 2021) (footnotes omitted). In *Akinwale*, the Eleventh Circuit recognized that the six-month period may be tolled if the alien "'acts to prevent [his] removal'" by filing litigation "challeng[ing] issues related to his removal order and his post-removal period detention." *Akinwale*, 287 F.3d at 1052 n.4 (quoting 8 U.S.C. § 1231(a)(1)(C)). More recently, the Eleventh Circuit noted that "if the removal period was extended by operation of § 1231(a)(1)(C), then ICE can continue to detain [the petitioner] because 'the keys to [the petitioner's] freedom [are] in his pocket and [he] could likely effectuate his removal by providing the information requested,' so he 'cannot convincingly argue that there is no significant likelihood of removal.'" *Singh*, 945 F.3d at 1314 (quoting *Pelich v. Immigration & Naturalization Serv.*, 329 F.3d 1057,

1060 (9th Cir. 2003)); *see Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015)[2] ("Because Petitioner is responsible for thwarting his removal, he cannot show that there is no reasonable likelihood that he will not be removed in the reasonably foreseeable future if he cooperates with DHS and voluntarily signs for the travel document."); *Oladokun v. U.S. Att'y Gen.*, 479 F. App'x 895, 897 (11th Cir. 2012) ("Oladokun fails to 'provide[ ] good reason to believe that there is no significant likelihood of [his] removal in the reasonably foreseeable future,'" because his "non-cooperation is the only barrier to his removal." (quoting *Zadvydas,* 533 U.S. at 701)).

Here, the Federal Respondents have not shown that Petitioner's "failure to sign" was akin to a "refus[al] to make timely application in good faith for travel or other documents necessary" for his removal or that his "failure to sign" otherwise prevented his removal. 8 U.S.C. § 1231(a)(1)(C). The three documents that Petitioner refused to sign are notices to him about ICE's intention to remove him to Mexico, not applications for travel documents or forms that would otherwise appear to assist in his removal. (*See* Doc. 5-3 at 2). The Federal Respondents fail to show that Petitioner's signature on these

[2] This Court does not rely on unpublished opinions as binding precedent; however, they may be cited in this Order when this Court finds them persuasive on a particular point. *See McNamara v. GEICO*, 30 F.4th 1055, 1060-61 (11th Cir. 2022); Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

forms is required for Petitioner's removal. Thus, the Court finds that the presumptively reasonable six-month period of detention expired prior to Petitioner filing the petition.

The Court also finds that Petitioner has provided good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future. Petitioner's order of removal became final in 1997, and he was released on an OSUP the same year. (Doc. 1 at 5; Doc. 5 at 2; Doc. 5-1 at 2; Doc. 5-2 at 1). He contends that he was re-detained on October 6, 2025, and ICE has "had [him] incarcerated for more than 6 months without any travel document for [him] from . . . Cuba nor any other country." (Doc. 1 at 2, 5–7; Doc. 5-2 at 2). Petitioner has now been detained for more than nine months, yet ICE still has been unable to remove him. Thus, the burden shifts to Respondents to "respond with evidence sufficient to rebut [Petitioner's] showing." *Akinwale*, 287 F.3d at 1052. As explained below, the Federal Respondents fail to do so.

The deportation officer avers that, on June 11, 2026, ICE informed Petitioner that it is going to "take him to the border with Mexico to effectuate his removal." (Doc. 5-3 at 2). But there is no information regarding when ICE plans to do so.[3] (*See generally id.*). Instead, the declaration merely describes

---

[3] The declaration is dated June 11, 2026—almost two months ago—yet Petitioner remains in custody. (Doc. 5-3 at 3).

the general process for third-country removals to Mexico—there is no specific timeline provided for Petitioner's alleged removal. (*See generally id.*). Nor is there any indication about whether Mexico will provide "final acceptance" of Petitioner. (*Id.* at 3 ("Following INM's final acceptance . . . .")). Petitioner has now been in ICE custody for over nine months—more than three months longer than the presumptively reasonable period—with ICE being unable to remove him or otherwise provide more specific details on when he will be removed. *See Zadvydas*, 533 U.S. at 701 ("[A]s the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely . . . shrink[s].").

Thus, based on the evidence presented, the Court finds that the Federal Respondents have failed to show a significant likelihood that Petitioner will be removed in the reasonably foreseeable future. Therefore, Petitioner is entitled to release from detention under *Zadvydas*. However, Petitioner's release "shall be subject to supervision under regulations prescribed by the Attorney General." 8 U.S.C. § 1231(a)(3); *Zadvydas*, 533 U.S. at 699–700 (holding that when continued detention is unreasonable because removal is not reasonably foreseeable, "the alien's release may and should be conditioned on any of the various forms of supervised release.").

Accordingly, it is **ORDERED**:

1. The Clerk shall update Petitioner's address to ERO El Paso Camp East Montana, 6920 Digital Road, El Paso, TX 79936.

2. Given Petitioner's transfer to a detention facility in Texas, the Warden's motion to dismiss (Doc. 4) is **DENIED as moot**.

3. Petitioner's petition for a writ of habeas corpus under 28 U.S.C. § 2241 (Doc. 1) is **GRANTED** as to his *Zadvydas* claim.[4] Respondents shall release Petitioner, subject to supervision pursuant to 8 U.S.C. § 1231(a)(3), **within 24 hours** of this Order, and they shall provide Petitioner with access to a telephone to arrange transportation from the detention facility.

4. The Clerk is **DIRECTED** to enter judgment granting the petition, terminate any motions, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida on August 5, 2026.

JORDAN E. PRATT
UNITED STATES DISTRICT JUDGE

[4] Because the Court grants relief on Petitioner's *Zadvydas* claim, the Court need not address Petitioner's other claims. *See Banks v. Dretke*, 540 U.S. 668, 689 n.10 (2004) (declining to address an additional claim in a habeas petition after granting relief on another claim because "any relief [petitioner] could obtain on that claim would be cumulative").

c:
Raul Hernandez Gonzalez
Counsel of Record